James R. **WILLIAMS**

v.

**KAISER ALUMINUM AND CHEMICAL CORPORATION.**

Civ. A. No. 67–31.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 6, 1968.

O. Romaine Russell, Wilbur D. Atkins, Jr., Teddy W. Airhart, Jr., Atkins, Airhart, Copenhaver & Russell, Baton Rouge, La., for plaintiff.

Frank W. Middleton, Jr., Tom F. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for defendant.

WEST, Chief Judge:

Plaintiff, James R. Williams, brings this suit to recover wages allegedly due for work performed by him for defendant, Kaiser Aluminum and Chemical Corporation, during the period of a strike at the Kaiser plant between September 8, 1965 and October 7, 1965. Plaintiff contends that Kaiser agreed to pay him on a 24 hour per day basis while he remained at the plant during the strike, and that he was to be paid straight time for 40 hours per week, time and a half for all of the rest of the time he remained at the plant except Sundays, for which days he was to receive double time. Plaintiff further contends that failure of the defendant to pay him on that basis constituted a violation of the Fair Labor Standards Act, 29 U.S.C.A. § 207(a) (1), and that he is thus not only entitled to recover unpaid wages, but is also entitled to recover a like amount as liquidated damages, together with attorney fees and costs.

Defendant, Kaiser, contends that it paid plaintiff all that it had agreed to pay and that at any rate, the overtime wages actually paid amounted to more than it was required to pay under the Fair Labor Standards Act, and that hence, even if additional wages are found to be due under their agreement, there was no violation on the part of Kaiser of the Fair Labor Standards Act.

After hearing the evidence and arguments of counsel, it is the opinion of the Court that there has been no violation by the defendant of the Fair Labor Standards Act, and hence no penalty or attorney fees are due plaintiff, but that according to the contract between the plaintiff and defendant, plaintiff was underpaid by the sum of $500.95. In connection with this conclusion the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, James R. Williams, has been employed by the defendant, Kaiser Aluminum and Chemical Corporation, for the past twenty years or more.

2. Kaiser Aluminum was struck by its employees on September 8, 1965, and the strike lasted through October 7, 1965, or a total of 29 days.

3. At the time of the strike plaintiff was classified as a "non-exempt" salaried employee. In this category he worked for a set monthly wage, but was entitled to overtime pay whenever he was required to work overtime. There were other employees at the plant classified as "exempt" salaried employees, which employees worked for a straight salary, without the benefit of overtime pay.

4. When the strike began, Kaiser Aluminum made arrangements to have some of its non-striking employees, both

in the category of non-exempt and exempt salaried employees, operate the plant during the strike.

5. When the strike became imminent, Mr. Barney L. Cutchen, who was production services superintendent and a spokesman for management, called a meeting to discuss operation plans, at which meeting some 26 or 27 employees, including plaintiff, were present. At that meeting the employees were told by Mr. Cutchen that the "exempt" employees who worked during the strike would be paid their regular salary, plus $100 per day, and that the "non-exempt" salaried employees would be paid their regular salary, including overtime, on a 24 hour a day basis for the entire time that they were on company premises during the strike. This meant that the "non-exempt" salaried employees, such as plaintiff, were to be paid their regular salary for 40 hours per week, plus one and a half times their regular salary for all hours over 40 hours per week that they were on company property, except that on each Sunday, for a 24 hour period, they would be paid twice their regular rate of pay, or double time.

6. Plaintiff's regular pay was $710 per month, and for computing overtime, his regular rate was $4.10 per hour. This meant that for all hours over 40 hours per week, the agreement was that the plaintiff would be paid at the rate of $6.15 per hour, and that for each Sunday, for a period of 24 hours, he would be paid at the rate of $8.20 per hour.

7. Of all of the employees affected by these arrangements, only three, including plaintiff, were "non-exempt" employees.

8. After these arrangements were made, and possibly some two or three days after the strike began, it occurred to someone that these arrangements would result in the non-exempt employees making more money than the exempt employees, even though they were all doing the same or similar work, and someone in the company, possibly the comptroller, Mr. John Burton, apparently decided that everyone should be placed on the same pay basis, that is, salary plus $100 per day. Mr. Burton told Mr. W. B. Gallent, who was ordinarily a section superintendent, of this change of plans. But during the strike Mr. Gallent was not working as plaintiff's superintendent, or supervisor, but instead was in charge of procurement of supplies, such as meals, etc. Mr. Gallent was not instructed by Mr. Burton to convey this information to the plaintiff, Mr. Williams, or to either of the other two non-exempt employees, and Mr. Gallent does not remember having ever conveyed such information to the plaintiff at any time during the strike.

9. There is no doubt but that the plaintiff and the other two non-exempt employees did hear, by way of rumor, of the suggested change in pay rates, but the fact remains that they were never so notified by anyone in authority on behalf of Kaiser Aluminum.

10. All of the employees who worked during the strike, including the plaintiff, were required to do so, and their working was not a voluntary matter. Two employees who decided not to work during the strike were apparently discharged from the company's employ.

11. Plaintiff Williams was on the company premises either working or available for work 24 hours of every day between September 8, 1965 and October 8, 1965, with the exception of one day on or about October 1, 1965, when he left at 4:00 p.m. in the afternoon and came back the next morning for the 7:00 a.m. shift, plus a two or three hour absence while at the doctor's office being treated for burns sustained in an accident on the job.

12. Plaintiff received no pay check during the period September 8, 1965 through October 7, 1965, because his pay checks were mailed to his home. Thus, it was not until he received his pay checks after the strike was over that he was actually aware of the fact that he had been paid on a different basis from that agreed upon at the meeting called

by Mr. Cutchen at the commencement of the strike.

13. There is absolutely no dispute whatsoever as to the fact that the plaintiff was told, unequivocally, at the commencement of the strike that for his work during the strike he would be paid his regular salary for 40 hours per week, plus overtime, as set forth hereinabove, for all of the remaining time that he was required to remain on company property during the strike. It was upon this arrangement that he undertook to do the work required of him by the company during the strike. There is also absolutely no question about the fact that no official of the company at any time advised the plaintiff that these arrangements had been changed. He was not consulted about any change, nor was he, in any official way whatsoever, given any opportunity to object to the change. The agreement between the company and the employees as to wages to be paid during the strike was an absolute, binding contract which the plaintiff has the right now to enforce.

14. Plaintiff was, as a matter of fact, paid the sum of $2,900, or $100 per day, over and above his regular monthly salary of $710 for his work during the strike. Under the agreement he should have been paid one month's salary of $710 plus overtime, on a 24 hour per day basis for 29 days, based on a basic rate of $4.10 per hour. This means that for all hours over 8 hours of each day from Monday through Friday—16 hours each day—during the period of the strike, he should have been paid time and one-half or at the rate of $6.15 per hour. Thus, during the 29 days involved, he should have been paid for 320 hours at $6.15 per hour, or $1,968. During that time there were 5 Saturdays on which plaintiff spent 24 hours each at the plant and he was thus entitled to be paid time and a half during those hours. For that time he should have been paid for 120 hours at $6.15 per hour or $738. During that 29 day period there were 4 Sundays during which days plaintiff spent 24 hours each at the plant and for these

hours he was entitled to be paid double time or $8.20 per hour. He was entitled to be paid for these 96 hours at $8.20 per hour, or $787.20. Thus, pursuant to his agreement with the defendant, plaintiff was entitled to a total overtime payment of $3,493.20, LESS the sum of $92.25 representing 15 hours on the afternoon and night of October 1, 1966 and the morning of October 2, 1966 during which plaintiff, according to his testimony, was not on the plant property but was instead at his home. These 15 hours, at time and one-half, must be deducted from the overtime worked, leaving a total overtime payment of $3,400.-95 to which plaintiff was entitled. He actually was paid $2,900 as overtime, and he is thus entitled to recover the difference, or the sum of $500.95 from the plaintiff.

15. The Court finds, as a fact, that while the defendant contracted to pay the plaintiff on a 24 hour a day basis for the duration of the strike, nevertheless, by plaintiff's own testimony it is clear that he did not actually work over 12 hours per day at the most. He came on duty at 7:00 a.m. and went off duty at 7:00 p.m. During the day he had time off to eat his meals and he was not called out at night to work. He was never placed on the emergency crew roster for night call out and hence he had a full 12 hours every night for relaxation and sleep.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter and venue is properly laid in the Baton Rouge Division of the Eastern District of Louisiana. 29 U.S.C.A. § 216.

2. Pursuant to a binding agreement entered into between plaintiff and defendant at the meeting called by Mr. Barney L. Cutchen on September 8, 1965, defendant became legally liable to the plaintiff for payment of his regular salary at the rate of $710 per month based on a 40 hour week, together with overtime of time and a half, based on an hourly rate of $4.10 per hour, for all

hours in excess of 40 hours per week that plaintiff remained on the plant premises during the strike, except that for 24 hours on each Sunday that plaintiff remained on the premises he was to be paid double time, or $8.20 per hour.

3. Based upon this agreement, and based upon the findings of fact hereinbefore enunciated, defendant is indebted unto plaintiff in the net sum of $500.95.

4. Since the Court has found, as a matter of fact, that the plaintiff did not actually work in excess of 84 hours a week, and that for this time he was actually paid in excess of $878, the Court now finds as a matter of law that defendant has in no way violated the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 207(a) (1) which requires that plaintiff be paid time and one-half for all hours worked in a week in excess of 40 hours. Under the facts as here found, that law only required that plaintiff be paid not less than $434.60 for the 84 hours worked.

5. The Court finds, as a matter of law, that defendant is not liable to plaintiff for the liquidated damages or attorney fees provided for in 29 U.S.C.A. § 216(b).

Judgment will be entered accordingly.